Richard Lee RABB, Appellant

v.

The STATE of Texas.

No. PD–1643–12.

Court of Criminal Appeals of Texas.

June 25, 2014.

Gregory Gray, Rockwall, for Appellant.

Craig Stoddart, Assistant District Attorney, Rockwall, Lisa C. McMinn, State's Attorney, Austin, for the State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which PRICE, WOMACK, JOHNSON, KEASLER, and HERVEY, JJ., joined.

Appellant, Richard Lee Rabb, was convicted of tampering with physical evidence under Section 37.09(a)(1) of the Texas Penal Code and sentenced to six years of confinement. The Seventh Court of Appeals reversed the trial court's judgment of conviction and rendered a judgment of acquittal. *Rabb v. State,* 387 S.W.3d 67, 73 (Tex.App.-Amarillo 2012). The State filed a petition for discretionary review asking that we consider (1) whether the court of appeals erred in failing to find overlap in the terms "conceals" and "destroys," (2) whether the court of appeals erred in not permitting the fact finder to infer the evidence was destroyed, and (3) whether the court of appeals was required to reform the judgment to a conviction on a lesser-included offense rather than acquit. We granted the State's petition in order to consider these issues. We now hold that while there is some overlap between the terms "conceals" and "destroys" for purposes of Section 37.09(a), no rational trier of fact could have found that Appellant destroyed the evidence in this case. However, because the court of appeals did not have the benefit of our recent opinion in *Thornton v. State,* 425 S.W.3d 289 (Tex. Crim.App.2014), we remand the case for the court of appeals to consider whether reformation of the judgment is required.

## FACTS

Appellant was shopping in a Wal-mart store in Rockwall with his step-brother, James Reynolds, and their mother. Appellant and Reynolds were both in the electronics section of the store, but some distance from each other, when a Walmart asset-protection coordinator observed Reynolds select items from the shelves in a suspicious manner. The employee then watched as Reynolds walked to another section of the store, unwrapped the merchandise, and hid it in his clothing. While observing this, the asset protection coordinator attempted to contact additional employees for backup. He had difficulty get-

ting a response, so he called the police and requested that an officer come to the store. Once Reynolds exited the check-out area without paying for the items in his clothing, he was detained by store employees. When questioned about who else was with him, Reynolds described his stepbrother, Appellant.

In the meantime, Appellant had continued shopping, unaware that Reynolds had been detained for shoplifting. After Appellant paid for his items and was exiting the store, a police officer who had responded to the call to the store approached him. The events that followed were captured by the store's security camera and shown to the court while witnesses narrated. The officer explained to Appellant that Reynolds was in custody for stealing merchandise and asked Appellant if he had taken anything from the store without paying. When Appellant responded that he had not, the officer asked for consent to search him. Appellant consented by immediately turning around and placing his hands in the air. The officer was conducting a patdown search and removing items from Appellant's pockets when one of the employees standing nearby noticed the corner of a plastic baggie in Appellant's hand. The employee notified the officer. When the officer went to retrieve the baggie, Appellant put the baggie in his mouth.

The officer demanded that Appellant spit out the baggie, but Appellant refused. The officer then attempted to restrain Appellant to keep him from swallowing the baggie. Appellant resisted, and a second officer who had been summoned to the store tasered Appellant multiple times, eventually rendering Appellant submissive and unconscious. At some point during the altercation, Appellant swallowed the baggie and its contents.

Although Appellant regained consciousness quickly, an ambulance was called to the scene. The medical report shows that Appellant told the medic that the baggie "contained pills that were not prescribed to him, but would not state exactly what they were. He originally said pain pills, but later said they were OTC meds and it was about four of them." No one made any attempt to retrieve the items that Appellant swallowed.

The State charged Appellant with violating Section 37.09 of the Penal Code by "knowing that an investigation was in progress, . . . intentionally or knowingly destroy[ing] a plastic baggie with intent to impair its availability as evidence in the investigation." The trial court convicted Appellant and sentenced him to six years of confinement.

## COURT OF APPEALS

Appellant appealed, arguing that the evidence was insufficient to establish that he destroyed the baggie or that he knew an investigation was in progress. *Rabb*, 387 S.W.3d at 70. The court first considered the evidence on Appellant's destruction of the baggie and addressed the definitions of "conceal" and "destroy." It reasoned that, contrary to the State's suggestion, the two terms should not be applied in a way that "maximizes their overlap" and produces a result where "every item concealed [would] also be considered destroyed." *Id.* at 72. While the State contended that the Appellant destroyed the baggie because his actions caused its "complete ruination," the court said that the State's definition was equating the two words simply because the item had not been recovered. *Id.* The court of appeals concluded that, because the evidence showed only the baggie's location and nothing about the condition of the baggie or pills, the acts of Appellant constituted concealment rather than destruction. *Id.* Based on this determination, the court of appeals reversed the trial

court, holding that no rational trier of fact could have found that Appellant destroyed the baggie within the meaning of the law.[1] *Id.* at 73.

## STANDARD OF REVIEW

In evaluating the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the defendant guilty of all of the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003). When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements. *Cada v. State,* 334 S.W.3d 766, 774 (Tex. Crim.App.2011) (citing *Planter v. State,* 9 S.W.3d 156, 159 (Tex.Crim.App.1999); *Fuller v. State,* 73 S.W.3d 250, 255–56 (Tex.Crim.App.2002) (Keller, P.J., concurring); *Macias v. State,* 136 S.W.3d 702, 705–06 (Tex.App.-Texarkana 2004, no pet.)). The due-process guarantee requires proof beyond a reasonable doubt to support every element of the offense alleged and demands that we reverse and order a judgment of acquittal if a rational trier of fact would entertain a reasonable doubt as to the defendant's guilt. *Swearingen,* 101 S.W.3d at 95.

## DESTRUCTION OF EVIDENCE

Section 37.09(a)(1) of the Texas Penal Code defines the offense of tampering with physical evidence with three elements: (1) Knowing that an investigation or official proceeding is pending or in progress; (2) a person alters, destroys, or conceals any record, document, or thing; (3) with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. *Williams v. State,* 270 S.W.3d 140, 142 (Tex.Crim.App.2008). As noted, Appellant's indictment alleged only that he destroyed the evidence and did not allege either of the statutory alternatives.

In the present case, the court of appeals looked to our opinion in *Williams* for the definition of "destroy" and for guidance in analyzing Appellant's actions. In *Williams,* we held that a glass crack pipe that had been broken into pieces when stepped on was destroyed for the purposes of this statute. *Id.* at 146. We asserted that, because the Legislature chose to use the three different words in the statute, " 'destroys' must have an effect distinct from 'alters' and 'conceals.' " *Id.* We then determined that evidence is "destroyed" when "ruined or rendered useless," rather than when its evidentiary value is lost or diminished. *Id.* at 145–46.

The court of appeals used this discussion from *Williams* in deciding that "destroy" and "conceal" should not so closely overlap as to be interchangeable in this case. The State, however, mischaracterizes the opinion as disallowing *any* overlap in the definitions of "destroy" and "conceal." In reality, the court of appeals explicitly acknowledged that "there is the possibility of overlap in the application of the three means of tampering." *Rabb,* 387 S.W.3d at 72. The court of appeals simply declined to extend the definition of "destroy" that we put forth in *Williams* to the situation in this case in which Appellant's "action so clearly constitut[ed] a concealment." *Id.*

---

1. Because it reversed on this issue, the court found it unnecessary to consider whether there was sufficient evidence of Appellant's knowledge that an investigation was in progress. *Rabb,* 387 S.W.3d at 73.

■ While the words chosen by the Legislature in defining this offense each have a distinct purpose, this does not preclude overlap among those meanings. *See, e.g., Clinton v. State,* 354 S.W.3d 795, 801 (Tex.Crim.App.2011) (concluding that "uses" and "presents" have some overlap in the debit-card-abuse statute); *Taylor v. State,* 117 S.W.3d 848, 851 (Tex.Crim.App. 2003) (stating there is nothing "unusual" in overlap between the terms "manager" and "employee"); *Patterson v. State,* 769 S.W.2d 938, 941 (Tex.Crim.App.1989) (holding that there is overlap in the terms "use" and "exhibit" in the deadly-weapon statute). Therefore, while "conceal," "destroy," and "alter" each have their own meaning, they are not mutually exclusive, and we do not find the court of appeals' decision in conflict with this conclusion.

■ The State also argues that the court of appeals erred in deciding that no reasonable trier of fact could have found that Appellant's actions constituted destruction of the baggie. The State points out that fact finders are permitted to draw reasonable inferences if supported by the evidence. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Hooper v. State,* 214 S.W.3d 9, 15 (Tex.Crim.App.2007). It asserts that concluding that the baggie was destroyed in Appellant's digestive tract was a reasonable inference for the trial court to make.

■ The State's statement of the law is correct. This means that if a fact finder could reasonably infer from the evidence that the baggie and pills were destroyed by their passage into Appellant's body, then the evidence would be sufficient to uphold Appellant's conviction. *Id.* The fact finder is, however, prohibited from drawing conclusions based on speculation or mere theorizing about the possible meaning of the facts. *Hooper,* 214 S.W.3d at 16.

In this case, the State did not present any evidence on the condition of the baggie or its contents after Appellant swallowed them, nor any evidence that demonstrated that the items had been ruined or rendered useless. In fact, there was not even an attempt made by officers or doctors to retrieve the baggie or to determine if its recovery was possible. There was, therefore, no evidence at the trial from which a fact finder could reasonably infer that the evidence had been destroyed.

The State also asserts that triers of fact are free to use their common sense, common knowledge, observation, and experience to make inferences reasonably drawn from the evidence. It argues that people's life experiences would allow an inference that the baggie was destroyed in Appellant's stomach. However, while it is *possible* that the baggie was destroyed, it is just as possible that it was not. Swallowing items filled with drugs is a common technique used by smugglers to conceal and transport those drugs. This act clearly does not cause the destruction of the drugs, or it would be useless to the transporters. Therefore, without any evidence on the status of the baggie, a determination on whether it was intact or destroyed after passing through Appellant's stomach would be based purely on speculation.

■ In order to prevail in any prosecution, "the State must prove the statutory elements that it [chose] to allege, not some other alternative statutory element that it did not allege." *Cada,* 334 S.W.3d at 776 (discussing the requirements of due process and *Jackson v. Virginia*). In this case, the State chose to allege only that Appellant destroyed the evidence and chose not to include either of the statutory alternatives. The State then presented no evidence that the baggie and its contents were destroyed and no evidence on which a fact finder could base a reasonable infer-

ence that they had been destroyed. Consequently, we hold that the court of appeals was correct in determining that no rational trier of fact could have found that Appellant destroyed the evidence.

### LESSER–INCLUDED OFFENSE

■ The State's final argument is that, upon finding the evidence insufficient to show Appellant "destroyed" the evidence, the court of appeals should have reformed his conviction to attempted tampering with evidence rather than entering a judgment of acquittal.

The State bases this argument on our decision in *Bowen v. State,* 374 S.W.3d 427 (Tex.Crim.App.2012), in which we overruled *Collier v. State,* 999 S.W.2d 779 (Tex. Crim.App.1999) and ordered the reformation of an acquittal judgment to reflect a conviction on a lesser-included offense.

Neither the State nor the court of appeals had the benefit of our decision in *Thornton v. State,* which was rendered on April 2, 2014. In *Thornton* we held that:

> [A]fter a court of appeals has found the evidence insufficient to support an appellant's conviction for a greater-inclusive offense, in deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, that court must answer two questions: 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? If the answer to either of these questions is no, the court of ap-

peals is not authorized to reform the judgment. But if the answers to both are yes, the court is authorized—indeed required—to avoid the "unjust" result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense.

425 S.W.3d at 299–300.

Therefore, the proper disposition here is to remand the case to the court of appeals for its consideration of those questions.

### CONCLUSION

Considering the evidence in the light most favorable to the court's verdict, a rational trier of fact could not have found beyond a reasonable doubt that Appellant destroyed the baggie and its contents. However, the court of appeals must analyze whether our recent decision in *Thornton* mandates reformation of the conviction rather than acquittal. Therefore, the case is remanded to the court of appeals for consideration of this issue.

COCHRAN, J., filed a concurring opinion.

ALCALA, J., filed a dissenting opinion, in which KELLER, P.J., joined.

COCHRAN, J., filed a concurring opinion.

I join the majority opinion. I write separately simply to point out that the State lost this conviction because it did not pay sufficient attention to its pleading. It may seem trivial, but there is, in cases such as this one, a difference between "concealing," "altering," and "destroying" evidence. That is why the legislature included all three criminal acts that constitute "tampering" with evidence in the statute.[1] And that is why a prosecutor might

---

1. TEX. PENAL CODE § 37.09(a)(1) ("A person    commits an offense if, knowing that an inves-

allege all three criminal acts in its indictment or information. I would agree that appellant concealed the baggie when he swallowed it, but there is no evidence to support a finding that the baggie was "destroyed" when swallowed.

Furthermore, although the parties have not raised the issue in this Court, I wonder how the baggie is "evidence" in an investigation? I can certainly understand how the *pills* contained within the baggie might be evidence if they are contraband, but surely possession of the baggie is neither a crime itself nor any evidence of a crime. Appellant may have swallowed the baggie, but it is the pills that matter.

Before filing a pleading, the cautious prosecutor might list out each element of the offense and each descriptive phrase and ask whether he can prove each element and allegation and whether the list adds up to a criminal offense.

ALCALA, J., filed a dissenting opinion in which KELLER, P.J., joined.

Eating, swallowing, digesting, and eliminating: These are things every human being intimately understands based on common sense and a lifetime of daily personal experiences. In deference to the fact-finder's common sense, I would hold that the evidence is legally sufficient to support the conviction of Richard Lee Rabb, appellant, for tampering with physical evidence. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (evidence is sufficient when, viewing the evidence and all reasonable inferences in the light most favorable to the verdict, a rational fact-finder could have found each element of the offense beyond a reasonable doubt). I conclude that a rational fact-finder could have determined that appellant ruined or rendered useless the pills and baggie by swallowing them, and, therefore, that he tampered with physical evidence by destroying it. *See* TEX. PENAL CODE ANN. § 37.09(a)(1) (West 2011). In contrast, the majority opinion circumvents the fact-finder's decision, calling it irrational, and, in the process, resurrects the long-dead reasonable-alternative-hypothesis analysis, which permits an appellate court to find the evidence insufficient based on the existence of scenarios in which the fact-finder's verdict could theoretically be wrong. *See Geesa v. State,* 820 S.W.2d 154, 156, 159 (Tex.Crim.App.1991) (rejecting reasonable hypothesis analytical construct for evaluating sufficiency of evidence). I would keep the nail in the coffin of the reasonable-alternative-hypothesis analytical construct, hold that the evidence is legally sufficient, sustain the State's first and second grounds in its petition for discretionary review, and reverse the judgment of the court of appeals. I, therefore, respectfully dissent.

## I. Evidence is Sufficient to Establish Tampering with Physical Evidence

By relying on common sense and life experiences, the fact-finder was rational in determining that the pills and baggie were ruined or rendered useless by appellant's act of swallowing them. The fact-finder's determination was not irrational merely because of the existence of an alternative reasonable hypothesis that is inconsistent with appellant's guilt, and the State was not required to provide affirmative evidence to disprove that alternative hypothesis. Because the fact-finder was rational in finding that the evidence was destroyed based upon the drawing of reasonable in-

tigation or official proceeding is pending or in progress, he ... alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding[.]'').

ferences, I would hold that the evidence is sufficient to establish appellant's guilt.

## A. The Baggie and Pills Were Rendered Useless for Their Intended Purpose

The record reflects that appellant was at a Walmart with his brother, James, when James was detained by Walmart security officers on suspicion of shoplifting. After police officers arrived, appellant was also detained and questioned about whether he had taken any store merchandise without paying for it. Appellant denied having stolen anything and consented to a search. During the police officer's subsequent search of appellant, a Walmart security officer alerted the officer that appellant was holding something in his hand. The police officer reached up and attempted to take the object, a plastic baggie, out of appellant's hand, but before he could reach it, appellant placed it into his mouth and refused to spit it out. A struggle ensued as the officer attempted to force appellant to spit out the baggie, and, at some point during the struggle, appellant swallowed the baggie. A second officer eventually tasered appellant in order to subdue him, and appellant was placed under arrest. An ambulance was called to the scene to check appellant's vital signs, at which point appellant told a paramedic that the baggie contained prescription pills that had not been prescribed to him. The baggie and pills were never recovered.

Based on a lifetime of personal experience with the digestive process that follows consumption of food and pills, a rational trier of fact could have found that the pills and baggie were destroyed by appellant's act of swallowing them, either because (1) they were digested in that process, or (2) they were expelled in an unsanitary condition in appellant's excrement after passing through his intestinal tract. Under either possible scenario, a

rational fact-finder could have found, based on the drawing of reasonable inferences, that the pills were destroyed.

A person commits the offense of tampering with physical evidence if, "knowing that an investigation or official proceeding is pending or in progress, he ... alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding[.]" TEX. PENAL CODE § 37.09(a)(1). This Court has previously interpreted the meaning of the statutory term "destroys" in *Williams v. State*, in which it held that an item of evidence is destroyed when it is "ruined and rendered useless," or, stated differently, when it "has lost its identity and is no longer recognizable." 270 S.W.3d 140, 145–46 (Tex.Crim.App.2008). In *Williams*, the defendant was convicted of tampering with physical evidence after a crack pipe fell to the ground during a police officer's pat-down search of him and he stomped on the pipe, breaking it into pieces. *Id.* at 141. On appeal, Williams argued that the evidence was insufficient to show that the crack pipe was destroyed because the crack pipe's remains, glass shards and a copper mesh filter, were admitted into evidence at trial and, therefore, retained some evidentiary value. *Id.* at 145. This Court disagreed. It explained that the plain meaning of the word "destroys" does not require proof of a lack of physical existence or a loss of evidentiary value because "the remains of a destroyed object can still have evidentiary value." *Id.* at 146. Applying this interpretation in *Williams*, this Court explained that the crack pipe was destroyed within the meaning of the evidence-tampering statute because officers were "unable to retrieve every piece of the shattered crack pipe, and even if the recovered pieces could have been glued together in an at-

tempt to reconstruct the evidence to its former physical state, it would be less than a complete crack pipe." *Id.* It went on to hold that the evidence was sufficient to show that the crack pipe was destroyed because the recovered pieces, glass shards and a copper mesh filter, "had lost their identity as a crack pipe and were not recognizable as a crack pipe." *Id.*

*Williams* decisively determined that, although the State must prove that a defendant acted with intent to impair the verity, legibility, or availability of evidence in an investigation, it need not prove that the altered, destroyed, or concealed item could not be used as evidence at a defendant's trial. *See id.;* TEX. PENAL CODE § 37.09(a)(1). Rather, under *Williams,* the relevant question is whether the evidence has been "ruined" or "rendered useless" for its intended purpose, or alternatively, whether it has "lost its identity" and is "no longer recognizable" as a result of the defendant's actions. *See Williams,* 270 S.W.3d at 146. Applying the reasoning of *Williams* to the facts of this case, I would hold that a rational fact-finder could have concluded that the pills and baggie were ruined or rendered useless, and thus destroyed, by appellant's act of swallowing them. *See id.* at 145–46; *see also* TEX. PENAL CODE § 37.09(a)(1). It is irrelevant whether the pills and baggie could possibly have retained some evidentiary value if they had passed intact through appellant's intestinal tract and been recovered. Regardless of whether the pills and baggie were entirely or partially digested by appellant or were expelled by appellant with his excrement, the fact-finder was not irra-

tional in determining that their condition after passing through his intestinal tract "would be less than" their "former physical state," and, therefore, ruined. *See Williams,* 270 S.W.3d at 146. I would hold that the fact-finder was rational in determining that the pills and baggie, whether digested or expelled, were rendered ruined or useless as to their intended purpose, and, therefore, were destroyed. *See id.;* TEX. PENAL CODE § 37.09(a)(1).[1]

**B. Existence of a Reasonable Alternative Does Not Make Evidence Insufficient**

The absence of direct evidence about what actually happened to the baggie and pills does not mean that the fact-finder engaged in impermissible speculation, as suggested by the court of appeals, because under any possible scenario, the fact-finder could rationally infer from the circumstances that the items were destroyed. *See Hooper v. State,* 214 S.W.3d 9, 15 (Tex.Crim.App.2007) (noting that, although fact-finder is not permitted to reach conclusions based on mere speculation, "direct evidence of the elements of the offense is not required"; fact-finder is "permitted to make reasonable inferences from the evidence presented at trial," and circumstantial evidence "is as probative as direct evidence" in establishing an actor's guilt).

In reaching its conclusion that the evidence is insufficient, the majority opinion reasons that, because some drug mules transport drugs in their intestines without those drugs being ruined, it was at least theoretically possible that the baggie and pills in this case were not ruined if they

---

1. I agree with appellant that the evidence in this case also establishes that he concealed and altered the pills and baggie, but I disagree that this necessarily means that they were not also destroyed. The same fact pattern can establish alteration, destruction and concealment of evidence. *See* TEX PENAL CODE

§ 37.09(a)(1). As Judge Womack pointed out in his concurring opinion in *Williams,* when "something is destroyed, it may also be said to have been altered" because these terms "may not be mutually exclusive." *See Williams v. State,* 270 S.W.3d 140, 147 (Tex. Crim.App.2008) (Womack, J., concurring).

passed through appellant's intestinal tract and were expelled in his excrement. For two reasons, I disagree with this line of reasoning. First, the fact-finder could have rationally determined that appellant's consumption of the baggie and pills, under the circumstances, would lead to their destruction because appellant swallowed those objects suddenly and without having planned to do so. Although I acknowledge, as the majority opinion does, that some drug mules are able to transport balloons filled with heroin and cocaine inside their intestinal tracts without those drugs being destroyed, that particular method of transporting drugs requires preparation. Mules will generally transport heroin and cocaine by placing the drugs inside two or more condoms, with each condom layered inside the other, so that the outer condom exposed to excrement may be discarded while the inner condom containing the drugs remains sanitary. The properly packaged balloons can pass through the intestinal tract without the drugs being compromised because such items will not generally dissolve in intestinal fluids. The drugs contained within the inner condom remain useable and in a sanitary condition because only the outer condom is exposed to intestinal fluids and excrement. Even in those situations, which involve careful planning and design, it is common knowledge that things can sometimes go wrong—for example, the balloons might rupture or become lodged in the intestinal tract.

In contrast, here, the fact-finder could have rationally inferred from the circumstances that appellant was not planning on swallowing the baggie and pills that day and that his impulsive act of swallowing those objects would cause them, unlike drugs packaged in multiply-layered condoms, to succumb to the corrosive effects of his intestinal fluids. And, even if the baggie and pills survived the intestinal tract, they would have passed in appellant's excrement, causing them to be ruined because they were unsanitary and unusable. Although the fact-finder could have reached a different conclusion had it weighed the facts differently, this Court must defer to the fact-finder's common sense with respect to the uselessness of pills that have passed through a person's intestinal tract. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789 (describing sufficiency-review standard as giving "full play to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"); *Temple v. State*, 390 S.W.3d 341, 360 (Tex.Crim.App.2013) (when record supports conflicting inferences, "we presume that the jury resolved the conflicts in favor of the verdict and therefore defer to that determination") (quoting *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2792); *Hooper*, 214 S.W.3d at 15 (fact-finder should be permitted "to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial").

Second, I disagree with the majority opinion's focus on circumstances that might be consistent with appellant's innocence, when it should instead focus on whether the fact-finder could rationally have found appellant guilty. The majority opinion reasons that, because some people can swallow items without those items being destroyed, such an outcome was at least theoretically possible in this case and, therefore, the existence of a circumstance that would be inconsistent with appellant's guilt renders the evidence insufficient. This type of reasoning marks the revival of the alternative-reasonable-hypothesis analytical construct, which required a reviewing court to find that every other reasonable hypothesis raised by the evidence was negated, save and except for that estab-

lishing the defendant's guilt, if a conviction was to be affirmed in a circumstantial-evidence case. *Reyes v. State,* 938 S.W.2d 718, 719 (Tex.Crim.App.1996) (stating that prior to *Geesa v. State,* this Court "employed the 'reasonable-hypothesis-of-innocence' analytical construct to review the sufficiency of the evidence in circumstantial evidence cases") (citing *Geesa,* 820 S.W.2d at 158). But this Court long ago "abolished the reasonable-hypothesis construct for measuring the sufficiency of the evidence in a circumstantial evidence case[.]" *Taylor v. State,* 10 S.W.3d 673, 680 (Tex.Crim.App.2000). "Courts and juries no longer face the difficult task of excluding every reasonable hypothesis other than the defendant's guilt." *Laster v. State,* 275 S.W.3d 512, 521 (Tex.Crim.App. 2009). And the State need not present evidence that conclusively excludes every conceivable alternative to a defendant's guilt. *See Wright v. West,* 505 U.S. 277, 296, 112 S.Ct. 2482, 2493, 120 L.Ed.2d 225 (1992) (prosecution has no affirmative duty to "rule out every hypothesis except that of guilt") (quoting *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781); *Merritt v. State,* 368 S.W.3d 516, 525 (Tex.Crim.App.2012) ("It is the State's burden to prove each element of the offense beyond a reasonable doubt, not to exclude every conceivable alternative to a defendant's guilt."). Even if it is true that some drug mules are able to transport drugs in their intestines in multiply-layered condoms without the drugs being destroyed, the existence of an alternative reasonable hypothesis does not mean that a fact-finder here would be irrational in determining that, where the pills were contained in a single plastic baggie and hurriedly swallowed by appellant in order to evade police detection, appellant's consumption of the baggie and pills destroyed the items, either through digestion or contact with excrement. I conclude that the fact-finder could have rationally determined, based on personal experience, that the baggie and pills either (1) succumbed to gastrointestinal fluids that dissolved and converted the contents into something else, or (2) passed through the intestinal tract and were expelled from the body through excrement, thereby ruining them and rendering them useless for their intended purpose.

## II. Conclusion

The majority opinion takes the unusually odd position of calling the fact-finder irrational for deciding that a baggie and pills that were either digested or exposed to excrement were "destroyed" within the meaning of the evidence-tampering statute. It is often said that this Court, in reviewing for sufficiency of the evidence, should not act as a thirteenth juror and should instead limit itself to guarding against the rare occurrence when a fact-finder does not act rationally. *See Isassi v. State,* 330 S.W.3d 633, 638 (Tex.Crim.App.2010); *see also United States v. Vargas–Ocampo,* 711 F.3d 508, 512 (5th Cir.2013) (original op.) (stating that fact-finder's role is to perform "weighing of inferences"; appellate court reviewing for sufficiency must defer to fact-finder's reasonable rejection of "benign explanation" for incriminating inferences). Because I conclude that a rational fact-finder could have determined that the baggie and pills were rendered useless or ruined by appellant's act of swallowing them, I would hold that the evidence is legally sufficient to sustain appellant's conviction for tampering with physical evidence. I, therefore, respectfully dissent.